## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KENNY SNELL,**

      **Petitioner,**

**v.**                              **Case No. 8:21-cv-1709-TPB-UAM**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Kenny Snell, a Florida prisoner, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Having considered the petition, Respondent's response in opposition (Doc. 10), and Snell's reply (Doc. 12), the Court **DENIES** the petition.

## Background

Snell and his girlfriend, Shaunah Patton, stole an 89-year-old woman's credit card and used it to purchase goods and hotel stays in Polk County, Florida. The victim, Dorothy Gorman, lived alone in Lakeland. (Doc. 10-2, Ex. 5, at 98). She received a flyer from Snell and Patton, who purported to run a business called No Limits Remodeling. (*Id.* at 157, 165). Gorman hired the couple to do "some painting and power washing," for which she paid in cash. (*Id.* at 100, 110). At some point during the work, Gorman's daughter noticed

1

that Gorman's credit card statement contained charges for goods and services "that were not what my mother would have ever used and [that] we didn't have receipts for." (*Id.* at 102). Gorman told her daughter that her credit card "was gone" and that she "was hoping [to] find it." (*Id.* at 101).

Snell and Patton used the card for 24 purchases totaling approximately $3,000, but the trial evidence focused on just three transactions. (*Id.*, Ex. 2, at 5; *id.*, Ex. 7, at 9-11). First, on April 9, 2013, Snell and Patton used the card to stay at a La Quinta Inn. (*Id.*, Ex. 5, at 113-15). Surveillance footage showed Patton handing the card to an employee at the front desk. (*Id.*, Ex. 11, at 3). The employee then gave the card back to Snell, who instructed Patton to sign the receipt. (*Id.*)

The next day, Snell and Patton used Gorman's card to stay at a Comfort Inn and Suites. (*Id.*, Ex. 5, at 141, 163, 181). The assistant manager on duty testified that Snell checked in, and that his female companion "came in a little bit" later. (*Id.* at 181). The receipt for the stay listed Snell as "the person who checked in." (*Id.* at 141). And surveillance footage showed Snell checking in to the hotel by himself. (*Id.*, Ex. 11, at 4).

Two days later, Snell and Patton used Gorman's card to purchase items at a Lowe's store. (*Id.*, Ex. 5, at 127, 164). During the transaction, the couple also used Snell's "MyLowe's card"—a "loyalty or value card." (*Id.* at 126-28).

Surveillance footage showed Snell and Patton making the purchase. (*Id.* at 130-31, 155).

Snell was ultimately charged with (1) theft from a person 65 years of age or older ($300 or more), (2) criminal use of personal identification information, (3) fraudulent use of a credit card more than twice, (4) scheme to defraud, and (5) unlawful possession of a stolen credit card. (*Id.*, Ex. 3). The prosecution *nolle prossed* the scheme-to-defraud count, and Snell went to trial on the remaining charges. (*Id.*, Ex. 1, at 1). The jury found him guilty as charged. (*Id.*, Ex. 6).

During sentencing, the prosecution highlighted Snell's extensive criminal history, which included a "three[-]year probation sentence" for falsely "identif[ying] himself as a contractor." (*Id.*, Ex. 7, at 5). This prior offense involved Snell defrauding a 66-year-old woman out of approximately $3,000. (*Id.*) The trial court sentenced Snell to a total of 20 years in prison—the statutory maximum. (*Id.* at 11). The court described the "purpose of this sentence" as "remov[ing] you from society as long as possible because we simply can't trust you anymore." (*Id.*)

Following an unsuccessful direct appeal, *Snell v. State*, 184 So. 3d 531 (Fla. 2d DCA 2015), Snell moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-2, Exs. 20, 21). The postconviction court summarily denied some claims and granted an evidentiary hearing on

others. (*Id.*, Exs. 22, 24). After the hearing, the court rejected the remaining claims. (*Id.*, Exs. 28, 29). Snell unsuccessfully appealed the denial of relief. (*Id.*, Ex. 34). This federal habeas petition followed. (Doc. 1; *see also* Doc. 6).

## **Standards of Review**

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable

application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Snell's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision

to the last related state-court decision that does provide a relevant rationale"

and "presume that the unexplained decision adopted the same reasoning."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Snell alleges ineffective assistance of trial counsel. Ineffective-

assistance-of-counsel claims are analyzed under the test established in

*Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing

of deficient performance by counsel and resulting prejudice. *Id*. at 687.

Deficient performance is established if, "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id*. at 690. However, "counsel is

strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Id*.

Snell must show that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had

no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Snell must

show "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the

outcome." *Id*. at 694.

6

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a

procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

<u>Discussion</u>

**Ground One**

Snell contends that trial counsel was ineffective for failing to raise an alleged double-jeopardy violation. (Doc. 1 at 10). According to Snell, double jeopardy bars his convictions for (1) theft from a person 65 years of age or

older ($300 or more), and (2) fraudulent use of a credit card more than twice. (*Id.*) Snell contends that, had counsel raised this alleged double-jeopardy violation, he "would only have been facing 15 years of maximum prison [] time versus the 20 years he received at sentencing." (*Id.* at 12).

Snell correctly concedes that he failed to raise Ground One in state court. (*Id.* at 12-13). Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), Ground One is procedurally defaulted, *see Smith*, 256 F.3d at 1138.

Snell seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 6 at 4-6). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

9

*Martinez* does not excuse the default of Ground One because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. In fact, the claim is frivolous because Snell's convictions plainly do not violate double jeopardy. "Florida courts apply the 'same elements' test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple convictions violate double jeopardy." *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1056 (11th Cir. 2021). Under *Blockburger*, two offenses are different for double-jeopardy purposes "if each requires proof of an additional fact which the other does not." *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008) (internal quotation marks and citation omitted). The key question is whether "a scenario exist[s] where the hypothetical defendant might violate one section without violating the other." *United States v. Hassoun*, 476 F.3d 1181, 1189 (11th Cir. 2007).

Snell's convictions for theft and fraudulent use of a credit card satisfy *Blockburger*. The elements of theft from a person 65 years of age or older ($300 or more) are: (1) knowingly (2) obtaining or using, or endeavoring to obtain or use, the property of another, (3) with the intent to either temporarily or permanently deprive the person of a right to the property or a benefit from it, or to appropriate the property to the defendant's own use or the use of any other person not entitled to it, (4) the stolen property is valued

at $300 or more, and (5) the defendant knows or has reason to believe that the victim is 65 years of age or older. Fla. Stat. §§ 812.014(1), 812.0145(2)(c).

By contrast, fraudulent use of a credit card more than twice occurs when, "with intent to defraud," a defendant (1) "obtains money, goods, services, or anything else of value by representing, without the consent of the cardholder, that he or she is the holder of a specified card or by representing that he or she is the holder of a card and such card has not in fact been issued," and (2) uses the card more than twice in a six-month period.[1] Fla. Stat. § 817.61.

These two offenses satisfy *Blockburger* because each requires proof of a fact that the other does not. The theft offense contains two elements not found in fraudulent use of a credit card—the value of the stolen property is at least $300, and the defendant knows or has reason to believe the victim is over 65. Likewise, fraudulent use of a credit card contains an element not found in the theft offense—obtaining property by falsely claiming to be the holder of someone else's credit card. Thus, "a scenario exist[s] where the hypothetical defendant might violate one section without violating the other." *Hassoun*, 476 F.3d at 1189. For example, a defendant could commit the theft

---

[1] A defendant can also commit element (1) by "us[ing], for the purpose of obtaining money, goods, services, or anything else of value, a credit card obtained or retained in violation of this part or a credit card which he or she knows is forged." Fla. Stat. § 817.61.

offense—but not fraudulent use of a credit card—by stealing $400 worth of jewelry from a 70-year-old victim. And a defendant could commit fraudulent use of a credit card—but not the theft offense—by using a 40-year-old victim's credit card three times in six months to purchase $50 worth of goods. Accordingly, double jeopardy does not bar Snell's convictions for these two offenses.

As a fallback, Snell contends that his convictions are unlawful because the two offenses are "degrees of the same offense." (Doc. 6 at 7). That is incorrect. Florida law precludes separate convictions where the "[o]ffenses . . . are degrees of the same offense as provided by statute." Fla. Stat. § 775.021(4)(b)2. But the offenses at issue—theft from a person 65 years of age or older ($300 or more), and fraudulent use of a credit card more than twice— "are clearly not degree variants of each other because they do not share a common name, contain very different formal elements, and exist in completely different chapters of Florida Statutes." *State v. Maisonet-Maldonado*, 308 So. 3d 63, 71 (Fla. 2020); *see also Velazco v. State*, 342 So. 3d 614, 617 (Fla. 2022) (noting that, to determine whether offenses are "degree variants of each other," courts consider "whether the offenses are located in the same statute, share a common name, contain similar formal elements, and criminalize similar conduct").

Because Snell's double-jeopardy argument is frivolous, his attorney was not deficient for failing to raise it. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that counsel "cannot be deficient for failing to raise a meritless claim"). Therefore, Snell's ineffective-assistance claim is not substantial under *Martinez*, and Ground One is barred from federal habeas review.

**Ground Two**

Snell contends that trial counsel was ineffective for failing to object to the court's alleged "use of improper sentencing factors when issuing [the] 20-year sentence." (Doc. 1 at 13). Before trial, the prosecution *nolle prossed* the scheme-to-defraud count. (Doc. 10-2, Ex. 1, at 1). Snell alleges that during sentencing, the court improperly relied on the "dismissed Count 4 Scheme to Defraud" as "justification" for imposing a 20-year sentence. (Doc. 1 at 15). He supports this assertion by quoting the following statement from the sentencing court: "I'm not going to abandon my common sense. It seems to me that they [*i.e.*, Snell and Patton] were partners in this scheme to victimize an elderly lady in the community." (*Id.* at 14).

The postconviction court rejected this claim on the ground that "[a]ny objection by trial counsel would have been meritless." (Doc. 10-2, Ex. 22, at 3). It explained that the sentencing court "was simply pointing out that [Snell] was a willing participant in the scheme" against the victim. (*Id.*) Thus,

"[t]he sentencing court's comment prior to sentencing . . . did not amount to its consideration of an improper sentencing factor." (*Id.*)

That conclusion was reasonable. "A defendant has a due process right . . . not to be sentenced based on false or unreliable information." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010); *see also Roberts v. United States*, 445 U.S. 552, 556 (1980) ("We have . . . sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude." (internal quotation marks and citation omitted)). "To prevail on a challenge to a sentence based on the consideration of such information, a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *Ghertler*, 605 F.3d at 1269. The defendant must make "a convincing showing that the introduction of specific constitutionally infirm evidence had an ascertainable and dramatic impact on the sentencing authority." *United States v. Sjeklocha*, 114 F.3d 1085, 1089 (11th Cir. 1997) (internal quotation marks omitted).

In context, it is clear that the *nolle prossed* scheme-to-defraud count did not "serve[] as the basis for [Snell's] sentence." *Ghertler*, 605 F.3d at 1269. The challenged remarks came in response to defense counsel's argument that Snell was "a minor participant" in the crimes compared to Patton. (Doc. 10-2, Ex. 7, at 6-7). Specifically, counsel asked for "some leniency" because, in his

14

view, Snell had merely "reaped the benefit of [Patton's] ill-gotten gains." (*Id.*)
The court responded: "It's like I tell the jury[,] I'm not going to abandon my
common sense. It seems to me that they were partners in this scheme to
victimize an elderly lady in the community[.]" (*Id.* at 7).

These remarks do not suggest that the court held Snell responsible for
"a crime that was dropped prior to trial." (Doc. 1 at 15). Instead, the court
was simply expressing its view that, contrary to defense counsel's argument,
Snell actively participated with Patton in "victimiz[ing] an elderly lady in the
community[.]" (Doc. 10-2, Ex. 7, at 7). As the factual summary above makes
clear, the court's view of the case was amply supported by the evidence
presented at trial. Furthermore, shortly after making the challenged
remarks, the court acknowledged that the prosecution had "dismissed [count]
four"—*i.e.*, the scheme-to-defraud count. (*Id.*) In these circumstances, there is
no basis to conclude that the *nolle prossed* count had any effect on the
sentence imposed—let alone "an ascertainable and dramatic impact."
*Sjeklocha*, 114 F.3d at 1089 (internal quotation marks omitted).

Accordingly, the postconviction court reasonably concluded that counsel
was not deficient for failing to raise Snell's meritless claim of sentencing
error. *See Freeman*, 536 F.3d at 1233 (noting that counsel "cannot be deficient
for failing to raise a meritless claim"). Ground Two is denied.

**Ground Three**

Snell contends that trial counsel was ineffective for (1) "allowing the State to redact the videotape evidence from the Comfort Inn transaction," and (2) failing to call Officer Henry Arlt as a witness to prove that the footage was redacted. (Doc. 1 at 16-20). As noted above, the jury saw surveillance footage that showed Snell checking in to the Comfort Inn by himself. (Doc. 10-2, Ex. 11, at 4). Snell maintains, however, that he merely "provided the clerk with his driver's license and vehicle information at check-in," and that Patton subsequently "returned from the restroom" and "handed the clerk the stolen credit card . . . to pay for the room." (Doc. 1 at 17). According to Snell, the complete, unredacted version of the footage would support his story, and counsel was ineffective for "allow[ing] the State to redact the videotape." (*Id.* at 20). Snell also claims that his version of events is supported by Officer Arlt's probable-cause affidavit, which states that the Comfort Inn footage "shows both [Snell] and [Patton] present during the transaction." (Doc. 10-2, Ex. 2, at 2). Thus, Snell argues that counsel should have called Officer Arlt as a witness to "verify that [Patton] was present at [the] check-in." (Doc. 1 at 18).

The postconviction court held an evidentiary hearing on this claim. At the hearing, Snell's postconviction counsel stated that his investigator had unsuccessfully attempted to obtain the original footage from the Comfort Inn.

16

(Doc. 10-2, Ex. 28, at 17-18). The court subsequently acknowledged that the original "video" was no longer "available." (*Id.* at 18). The court also heard testimony from Snell's trial counsel, Joshua Westcott. Counsel testified that he recalled Snell mentioning "an extended portion of the video." (*Id.* at 37). Counsel could not recall whether he attempted to obtain the original footage from the Comfort Inn. (*Id.*) But he stated that his "general practice" was to "at least call the business and say[,] is there any possibility that[] [the] day's video footage was still on file." (*Id.* at 37-38; *see also id.* at 48). He also noted that he had never "been able to recover security footage" in any of his cases. (*Id.* at 38). Counsel explained that many businesses "recycle over" footage "anywhere from 24 to 48 hours up to maybe 60 days" later. (*Id.* at 38). In this case, counsel began representing Snell five months after the crimes took place. (*Id.* at 27-28, 38).

Counsel also testified that he "probably didn't" depose Officer Arlt because the allegations in Snell's case "completely relie[d] on the desk clerk identifying items and on the videotape that ha[d] been submitted." (*Id.* at 39). As a result, "any of the detectives that were involved were almost" performing "ministerial[]" functions "in [the] sense that they took the report from the victim and they recovered evidence to turn over later." (*Id.*) In other words, "[t]hey weren't physically witnessing something that an alleged defendant had done." (*Id.*)

Following the hearing, the postconviction court rejected Snell's ineffective-assistance claim in a written order. The court found that counsel "was not ineffective in failing to obtain the video evidence suggested by" Snell. (*Id.*, Ex. 29, at 4). In support, the court cited counsel's testimony that "it was his routine practice to call the hotels in question in order to determine if any relevant video existed," and that "it was his experience that videos at the hotels would have been taped over shortly after the events in question." (*Id.*) The court also found no prejudice from the failure to obtain the alleged footage, explaining that "it [was] not reasonably probable that the result of the trial would have been different had trial counsel found the missing video[]." (*Id.* at 4-5). In addition, the court held that counsel was not deficient for failing to depose or present testimony from Officer Arlt. (*Id.* at 4). The court reasoned that Snell "ha[d] failed to establish any alleged value in deposing or calling Officer Alt as a witness at trial." (*Id.*)

The rejection of this claim was reasonable. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 562 U.S. at 101. Thus, to prevail on his ineffective-assistance claim, Snell must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks v. GDCP Warden*, 975

F.3d 1165, 1176 (11th Cir. 2020). In addition, "an attorney's testimony about her regular practice and procedure . . . [is] sufficient to support a finding that the attorney acted consistently with that practice." *Nejad v. Att'y Gen., State of Georgia*, 830 F.3d 1280, 1294 n.7 (11th Cir. 2016); *see also Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1314 (11th Cir. 2009) ("[P]rofessional people should be able to prove the manner in which they routinely handle matters that recur in their work, in order to show that they followed that routine in a particular instance." (internal quotation marks and citation omitted)); *Strickland v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-1251-TJC-32JBT, 2018 WL 4407108, at *9 (M.D. Fla. Sept. 17, 2018) ("In reviewing claims of ineffective assistance of counsel where a trial counsel does not have specific memories otherwise, courts may rely on an attorney's representation that his or her conduct at the time was in conformance with his or her general practice or habit.").

The postconviction court reasonably concluded that counsel was not deficient in his handling of the Comfort Inn surveillance footage. Snell faults counsel for failing to object to the prosecution's alleged "improper redaction" of the footage. (Doc. 1 at 20). But counsel testified that, although he could not specifically recall whether he tried to obtain the original footage, his "general practice" was to "at least call the business and say[,] is there any possibility that[] [the] day's video footage was still on file." (Doc. 10-2, Ex. 28, at 37-38;

*see also id.* at 48). A reasonable jurist could conclude from this testimony that

counsel tried to obtain the original Comfort Inn footage, but the video was

simply unavailable by the time he reached out. *See McGriff v. Dep't of Corr.*,

338 F.3d 1231, 1237-38 (11th Cir. 2003) (affirming district court's finding

that defendant was informed of his right to testify based on attorney's

testimony that "her ordinary practice was to advise her clients as to the

consequences of testifying, and she never prevented clients from taking the

stand"). And without the original footage, counsel could not plausibly

maintain that the video played at trial was "improper[ly] redact[ed]." (Doc. 1

at 20). Accordingly, the postconviction court reasonably determined that

counsel was not ineffective for failing to object to the Comfort Inn footage.

     The court likewise acted reasonably in finding that counsel was not

deficient for failing to call Officer Arlt as a witness. Officer Arlt allegedly

would have testified that, based on the Comfort Inn surveillance footage, both

Snell and Patton were "present" during the check-in. (Doc. 1 at 20). But this

testimony would have been of little use to Snell. The assistant manager who

handled the check-in process testified that Snell—not Patton—checked in to

the hotel. (Doc. 10-2, Ex. 5, at 181). Moreover, the receipt for the stay listed

Snell as "the person who checked in." (*Id.* at 141). Thus, regardless of

whether Patton was "present" during the check-in, the jury still could have

found that Snell handed the stolen credit card to the assistant manager.

And even if Patton had given the card to the assistant manager, it does not follow that Snell would have been acquitted. That is because a reasonable jury could have found Snell guilty as a principal.[2] The principal theory "holds a defendant liable for acts performed by another if the proof sustains the jury's view that the defendant intended the criminal act be done, coupled with some act or work to incite, cause, encourage, assist[,] or advise the other to commit the crime." *Barfield v. State*, 762 So. 2d 564, 566-67 (Fla. 5th DCA 2000). As noted above, Snell was Patton's boyfriend, and the credit card was stolen from the victim's house while the two purported to work there. Snell and Patton subsequently used the card to stay at hotels together and purchase various items. Moreover, Snell was present for the three transactions highlighted at trial—the check-ins at the two hotels, and the purchases at the Lowe's store. Taken together, this evidence was sufficient to establish that Snell "acted in concert with [Patton] in committing" the charged offenses. *Banks v. State*, 219 So. 3d 19, 32 (Fla. 2017). Nothing in Officer Arlt's hypothetical testimony would have undermined that conclusion.

In short, a reasonable jurist could conclude that counsel's decision not to call Officer Arlt at trial "fell within the wide range of reasonable

---

[2] The jury was instructed that it could convict Snell under a principal theory. (Doc. 10-2, Ex. 5, at 223).

professional conduct." *Franks*, 975 F.3d at 1176. Thus, Ground Three is denied.[3]

**Ground Four**

Finally, Snell contends that trial counsel was ineffective for failing to object to the principal instruction with sufficient "specificity." (Doc. 1 at 22). According to Snell, counsel made only a "barebones objection to the principal instruction, and gave no argument or reason as to why the court should have granted the objection." (*Id.*) He maintains that, had counsel "made sufficient argument," "such objection would have been granted and the outcome of the trial would have been different." (*Id.* at 23).

The postconviction court rejected this claim for the reasons stated in the prosecution's response, which was "incorporated herein" by reference. (Doc. 10-2, Ex. 24, at 2-3). The response noted that any additional objection to the principal instruction would have failed because the prosecution "presented more than enough evidence to instruct the jury . . . that [Snell] was punishable as [a] principal." (*Id.*, Ex. 23, at 21). The response also stated that counsel "made clear his objection to the principal instruction during a

---

[3] For the first time in his reply, Snell argues that counsel should have objected to "the State's *Giglio* violation." (Doc. 12 at 13). The Court declines to consider this claim because it was raised for the first time in Snell's reply. *See Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." (internal quotation marks and citation omitted)). Even if the claim had been properly presented, it would fail because it is unexhausted and procedurally defaulted.

preliminary charge conference." (*Id.*) Specifically, counsel objected to the instruction on the ground that "[t]here's been no predicate laid to show there was any evidence of aiding or encouragement." (*Id.*, Ex. 5, at 175). That objection was "renewed during the more comprehensive charge conference after the State's rebuttal case," and "renewed [] yet again after the State's closing argument." (*Id.*, Ex. 23, at 21). It was therefore "unclear what more [Snell] expected" of counsel. (*Id.* at 21-22).

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (internal quotation marks and citation omitted). Here, the state court found that counsel was not deficient because, as a matter of Florida law, any additional objection to the principal instruction would have failed. (Doc. 10-2, Ex. 24, at 2-3). Thus, the state court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Snell] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See, e.g., Dixon v. Sec'y, Fla. Dep't of Corr.*, No. 23-10380, 2023 WL 9508471, at *1 (11th Cir. Aug. 28, 2023) ("The district court had to defer to the state post-conviction court's

finding that the instructions were not improper under Florida law and, thus, an objection to the instructions based on state law would have been without merit.").

Because the state court "authoritatively decided as a matter of [Florida] law" that Snell's proposed objection lacked merit, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). It is well established that "[a] lawyer cannot be deficient for failing to raise a meritless claim." *Freeman*, 536 F.3d at 1233. Therefore, the state court reasonably concluded that counsel was not ineffective for declining to raise an additional objection to the principal instruction. Ground Four is denied.

## <u>Conclusion</u>

Accordingly, it is **ORDERED** that Snell's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Snell and to **CLOSE** this case.

It is further **ORDERED** that Snell is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Snell must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the

24

procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Snell has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Snell must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, this 29th day of May, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**